716 A.2d 285

**Shirley JONES, Personal Representative of the Estate of Evelyn V. Manning**

v.

**Brian T. FLOOD et al.**

**No. 124, Sept. Term, 1997.**

Court of Appeals of Maryland.

Sept. 1, 1998.

Steven M. Nemeroff, Wortman & Nemeroff, P.A., on brief, College Park, for petitioner.

Sean D. Wallace, Deputy County Atty., on brief, Upper Marlboro, and Christopher R. Dunn (DeCaro, Doran, Siciliano, Gallagher & DeBlasis, L.L.P., on brief), Lanham, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

RODOWSKY, Judge.

We issued the writ of certiorari in this case to decide whether the personal representative of a decedent, whose death was tortiously caused, may recover damages in a survival action measured by lost earnings for the period after death to the end of the statistical life expectancy that would have been predicted for the decedent if the tort had not occurred.

In answering this question in the negative, we reject the petitioner's contention that an affirmative answer is required by *Monias v. Endal*, 330 Md. 274, 623 A.2d 656 (1993).

The petitioner is Shirley Jones, as personal representative of the estate of Evelyn V. Manning (Manning). Manning was killed in a motor vehicle accident on Route 202 in Prince George's County that occurred on December 29, 1994. A vehicle operated by the respondent, Brian T. Flood, and owned by the respondent, Prince George's County, struck Manning, crushed her against her disabled vehicle, and killed her.

Manning's immediate survivors are her four children, all of whom are over twenty-one and none of whom was dependent on her. A divorcee, Manning was unmarried at the time of her death.

After the present action was instituted in the Circuit Court for Prince George's County, the parties agreed that the petitioner would voluntarily dismiss a claim for punitive damages; they stipulated that Manning suffered no conscious pain after the accident, and the respondents admitted liability. There remained for disposition the petitioner's claims for future lost earnings and for funeral expenses. The circuit court granted a motion for partial summary judgment in favor of the respondents on the lost earnings claim, and, as a result of a waiver of jury trial, the judgment for funeral expenses was entered by the court.

The petitioner appealed to the Court of Special Appeals, which affirmed. *Jones v. Flood*, 118 Md.App. 217, 702 A.2d 440 (1997). We issued the writ of certiorari on the petition of the personal representative.

The action before us may be maintained because Maryland Code (1974, 1995 Repl.Vol.), § 6–401(a) of the Courts and Judicial Proceedings Article (CJ), provides, in relevant part, that "a cause of action at law, whether real, personal, or mixed, survives the death of either party." This "survival" statute changes the common law rule under which causes of action possessed by a person abated upon the death of that

person. Further, under Maryland Code (1974, 1991 Repl. Vol.), § 7–401(x) of the Estates and Trusts Article (ET), a personal representative may with certain exceptions not here relevant "prosecute ... claims ... including the commencement of a personal action which the decedent might have commenced or prosecuted...."

The petitioner rests her argument for post-death lost earnings exclusively on *Monias,* a medical malpractice action that involved a plaintiff, Ms. Endal, who was living at the time judgment was entered in her favor. In August 1986 the defendant had negligently failed to detect a malignant tumor. Had the tumor been detected "Ms. Endal would have had an 85–90% probability of survival and a normal life expectancy." *Id.* at 277, 623 A.2d at 657. When the tumor was actually detected, Ms. Endal "had only a 20% chance of survival beyond November, 1992." *Id.* The jury in *Monias,* in answer to special interrogatories, awarded $33,000 for loss of income in the future "to date of premature death" and awarded $250,000 for loss of income or earnings for the period after the predicted premature death to the predicted time of death had the tumor been discovered in August 1986. *Id.* at 278, 623 A.2d at 658. Whether these future lost earnings were recoverable as damages at all was a question which had remained open in this Court since *Rhone v. Fisher,* 224 Md. 223, 231–32, 167 A.2d 773, 779 (1961). In *Monias,* we held

"in accord with the majority of other jurisdictions, that the proper measure of lost earnings damages in a personal injury action for a plaintiff whose life expectancy is reduced by the defendant's negligence is the plaintiff's loss of earnings based on the plaintiff's life expectancy had the tortious conduct not occurred, rather than loss of earnings based on the plaintiff's post-tort shortened life expectancy."

*Monias,* 330 Md. at 281, 623 A.2d at 659.

The petitioner submits that, in a survival action, the personal representative may recover those damages which the decedent could have recovered had the decedent survived. For example, in *Smith v. Gray Concrete Pipe Co.,* 267 Md.

149, 297 A.2d 721 (1972), *overruled on other grounds by Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 601 A.2d 633 (1992), involving the claim of a decedent who was killed in an automobile accident with the defendant tortfeasors, we held "that a personal representative may recover exemplary damages in those cases where they might have been awarded to the decedent, whose estate he administers, had the former survived." *Id.* at 160, 297 A.2d. at 727. Here, the petitioner submits that, had Manning survived the accident, she would have been entitled, under *Monias,* to lost earnings for the period by which her life expectancy was shortened, and, because her life expectancy was shortened to none at all, the personal representative is entitled to lost earnings damages for the entire pre-accident life expectancy of Manning. The petitioner further submits that the instant action, as in *Monias,* is a personal injury action and that the *Monias* rule applies to all personal injury actions, whether maintained by the injured person, or by that person's personal representative under the survival statute.

The short answer to these contentions is that a survival action seeking damages for personal injuries to the decedent is not a personal injury action within the meaning of *Monias.* In *Monias* we began our discussion "by noting that we are dealing with loss of earnings recoverable in a personal injury action. We are not concerned with loss of earnings in a survival action.[2] " *Monias,* 330 Md. at 279, 623 A.2d at 658. In footnote 2 we specifically stated that "[a] decedent's lost future earnings are not recoverable in a survival action in Maryland." *Id.* at 279 n. 2, 623 A.2d at 658 n. 2. Thus, although the petitioner here repeatedly asserts that Manning's claim is a personal injury claim, for purposes of applying the rule in *Monias* there are at least three classes of actions that may be based on tortious personal injuries, *i.e.,* a "personal injury action," a survival action, and a wrongful death action under CJ § 3–904, the Maryland Lord Campbell's Act. Phrased another way, a claim for lost earnings in a survival action embraces only the period from onset of the loss to death.

Accordingly, the petitioner is, in effect, asking us to use *Monias* as a springboard for expanding beyond death lost earnings damages recoverable in a survival action. We decline so to hold because it would effect a substantial upheaval in well-established Maryland law, contrary to the *stare decisis* principle, because aspects of the requested change impact long-standing policy decisions by the General Assembly involving economic damages for the post-death period, and because the requested change would involve a high risk of duplicating the damages in a companion wrongful death case.

Although the General Assembly provided, as early as Chapter 80 of the Acts of 1785, for the survival of certain actions instituted in the lifetime of the decedent, *see Stewart v. United Elec. Light & Power Co.*, 104 Md. 332, 334, 65 A. 49, 50 (1906), early survival statutes did not include actions based on injuries to the person. The earliest legislation in Maryland authorizing any damages where the death of a person was caused by a wrongful act was the enactment of Lord Campbell's Act by Chapter 299 of the Acts of 1852. By the adoption of the Code of 1888 the survival statute was expanded to authorize personal representatives "to *commence* and prosecute *any personal action* whatever. . . ." *Stewart*, 104 Md. at 337, 65 A. at 51. *Stewart* addressed the interrelationship between Lord Campbell's Act and the expanded survival statute.

Writing for the Court, Chief Judge McSherry explained in *Stewart* that the later statute was intended to cover that which was not covered by the earlier enactment; the two enactments are not really alternatives of each other. *Id.* at 339, 65 A. at 52. After noting that the wrongful death action is brought "for the use of certain equitable plaintiffs who are kindred of the deceased," *id.*, while the survival action is brought by the personal representative, Chief Judge McSherry addressed the differences in damages between the two actions, saying:

"Under [Lord Campbell's Act] the damages recoverable are such as the equitable plaintiffs have sustained *by the death* of the party injured; under [the survival statute] the damages recoverable are *only* such as the deceased sustained in

his lifetime and consequently exclude those which result to other persons from his death."

*Id.* at 339–40, 65 A. at 52 (emphasis of "only" added). Further, in demonstrating that the damages recoverable under the two statutes are "entirely different," the Court stated that if Lord Campbell's Act were "merely a survival statute, the recovery is limited to such damages as might have been recovered by the deceased himself, had he survived the injury and brought the action." *Id.* at 342–43, 65 A. at 53. In the wrongful death action, the damages are "measured by the standard of the pecuniary value of the life of the person to the party entitled to the damages," while "under the survival statute, the damages are limited to compensation for the pain and suffering endured by the deceased, his loss of time and his expenses *between the time of his injury and his death." Id.* at 343, 65 A. at 53 (emphasis added).

Maryland courts have consistently applied the survival statute in accordance with the *Stewart* construction, namely, that it applies to pre-death harms. *See Monias,* 330 Md. at 279 & n. 2, 623 A.2d at 658 & n. 2; *United States v. Streidel,* 329 Md. 533, 544 n. 9, 620 A.2d 905, 909 n. 9 (1993); *Fennell v. Southern Maryland Hosp. Center, Inc.,* 320 Md. 776, 792, 580 A.2d 206, 214 (1990); *Tri–State Poultry Coop., Inc. v. Carey,* 190 Md. 116, 125, 57 A.2d 812, 817 (1948); *White v. Safe Deposit & Trust Co.,* 140 Md. 593, 598, 118 A. 77, 79 (1922); *ACandS, Inc. v. Asner,* 104 Md.App. 608, 645, 657 A.2d 379, 397–98 (1995), *rev'd on other grounds,* 344 Md. 155, 686 A.2d 250 (1996); *Globe American Cas. Co. v. Chung,* 76 Md.App. 524, 539, 547 A.2d 654, 661 (1988), *vacated on other grounds,* 322 Md. 713, 589 A.2d 956 (1991); *Biro v. Schombert,* 41 Md.App. 658, 665, 398 A.2d 519, 523, *vacated on other grounds,* 285 Md. 290, 402 A.2d 71 (1979). The rule recognized in the above-cited cases has become embodied in standard jury instructions. See Maryland Institute for Continuing Professional Education of Lawyers, Inc., *Maryland Civil Pattern Jury Instructions* § 10:17, at 229 (3d ed. 1997) ("The economic losses to be considered include ... the loss of earnings from the time of injury to the time of death."); R.

Bell, *Maryland Civil Jury Instructions* § 42.10, at 1016–17 (1993) (In awarding damages in a survival action, the jury may consider "the loss of earnings of [the decedent] from the time of the injury until the time of death.").

Further undermining the argument for modifying or abandoning the rule discussed above is that the Maryland rule is the majority position. W.P. Keeton & W. Prosser, *Prosser and Keeton on the Law of Torts* § 127 (5th ed. 1984) (Prosser), states:

> "A number of states have both death acts and survival acts. There are then two causes of action, and it usually is held that they may be prosecuted concurrently to successful judgment. The usual method of dealing with the two causes of action has been to allocate the pain and suffering, expenses and loss of earnings of the decedent up to the date of his death to the survival action, and hence to the estate, and the loss of benefits of the survivors to the action for wrongful death, and so to the beneficiaries."

(Footnotes omitted). *See also McCormick on Damages* § 94, at 337 (1935) (stating that in states where both a wrongful death and a survival action may be brought, "the damages in the survival action are limited to compensation for injuries actually accruing before death. . . .").

Also addressing the issue before us is an annotation by J.O. Pearson, Jr., *Recovery, in Action for Benefit of Decedent's Estate in Jurisdiction Which Has Both Wrongful Death and Survival Statutes, of Value of Earnings Decedent Would Have Made After Death,* 76 A.L.R.3d 125 (1977 and Cum.Supp. 1997). Where a wrongful death action will lie as well as a survival action, it appears that only the District of Columbia, Pennsylvania, and Washington have clearly recognized the inclusion of an amount for the loss of the decedent's future earnings in the damages under the survival statute. *Id.* at 135–36. On the other hand, Hawaii, Kansas, Massachusetts, Missouri, Nebraska, New York, Ohio, Oklahoma, and Wisconsin have rejected post-death loss of earnings claims under the survival statute. *Id.* at 137 & Supp. at 39. It appears that

cases in Florida, *id.* at 135 & 137, and Texas, *id.* (Supp.) at 39, have differed in their results. Hawaii formerly allowed as damages post-death loss of earnings in survival actions, but in *Greene v. Texeira*, 54 Haw. 231, 505 P.2d 1169, 76 A.L.R.3d 111 (1973), the Supreme Court of Hawaii overruled *Rohlfing v. Moses Akiona, Ltd.*, 45 Haw. 373, 369 P.2d 96 (1961), and interpreted its survival statute "in accordance with the views of most states with statutes such as [Hawaii's]." *Greene*, 54 Haw. at 236, 505 P.2d at 1173, 76 A.L.R.3d at 115.

Petitioner also submits that the rule for which she contends is simply a measure of damages in a survival action, a judicial function, so that there is no legislative obstacle to creating the rule judicially. Assuming that this Court has the power to change the rule, the issue presented nevertheless requires an exercise of judicial discretion. Petitioner's proposal that post-death lost earnings be allowed in survival actions against the death-causing tortfeasor encroaches into the area in which the General Assembly has established the policy. The economic impact of a wrongful death is legislatively addressed in Lord Campbell's Act. Under the original Maryland statute the newly created cause of action was conferred only on a spouse, parent, or child of the decedent. Chapter 299 of the Acts of 1852. Under the present statute the class of claimants has been enlarged to include, in the absence of any spouse, parent, or child, "any person related to the deceased person by blood or marriage who was wholly dependent upon the deceased." CJ § 3–904(b). An award of damages in a wrongful death action is apportioned among the beneficiaries. CJ § 3–904(c). The estate of the person tortiously killed is not, and never has been, a beneficiary under Lord Campbell's Act. In creating the new remedy for wrongful death, and in periodically expanding it, the General Assembly has located the line between those who may and those who may not benefit by an award of wrongful death damages, an element in the calculation of which is the projected earnings of the decedent over the decedent's life, or work-life, expectancy. In the instant matter, Manning's children are not beneficiaries under Lord Campbell's Act. The instant action is an end run around the

legislatively imposed limitations under Lord Campbell's Act in an effort to utilize projected post-death earnings for an award to the estate. Because the operating principle for which the petitioner contends is that the decedent's claim for future lost earnings survives, there is no limitation at all on the class of potential beneficiaries. The class of those who may sue for post-death lost earnings would be limited only by the disposition in the decedent's will, or by the rules of intestate distribution, which can extend far beyond the relationships specified in Lord Campbell's Act. *See* ET §§ 3–101 through 3–110.

"[C]ourts must defer to the Legislature in striking the sensitive balance as to the causes of action and measure of damages which are recoverable due to the wrongful death of another. If a change is to be made to allow for recovery of lost future earnings in an action pursuant to [the survival statute], it must be done by the Legislature, not by the courts."

*Kordonsky v. Andrst,* 172 A.D.2d 497, 499, 568 N.Y.S.2d 117, 119 (1991).

A further reason for rejecting petitioner's contention is that it cannot be implemented by an extension of *Monias* without duplicating in a survival action damages awarded in a wrongful death action. In a wrongful death action the part of the award apportioned to a particular beneficiary is the present value of the support that the decedent would have provided to the beneficiary had the decedent's life not been prematurely terminated. An extension of *Monias* to a survival action would look to the present value of the earnings of the decedent over the decedent's normal life expectancy, and thus would include the amounts that the decedent would have applied to the support of the beneficiaries of the wrongful death action. At oral argument the petitioner dismissed this obstacle by suggesting that the trial court should instruct the jury to subtract from the award in the survival action the amount awarded in the Lord Campbell's action.

The petitioner's suggested solution to the duplication problem nevertheless produces an inflated award. Simply deducting the award in the wrongful death action from the award in

a survival action that includes post-death loss of earnings still leaves that part of the stream of future income that the decedent would have disposed of during the decedent's normal lifetime for the decedent's own personal purposes as part of the lost future earnings awarded as damages to the estate.

There are a few states in which the damages in a survival action are measured by the post-death lost gross earnings less the amount that the decedent would have expended on the support of others and for the decedent's personal maintenance, reduced to present value. *See Runyon v. District of Columbia,* 463 F.2d 1319 (D.C.Cir.1972); *Griffith v. United Air Lines,* 416 Pa. 1, 203 A.2d 796 (1964); *Criscuola v. Andrews,* 82 Wash.2d 68, 507 P.2d 149 (1973). This approach to survival act damages allows recovery "for the loss of the accumulated savings which the decedent might have been expected to make during the period of his pre-accident life expectancy...." Prosser § 127, at 950. In a sense, this theory is an action by the estate for the amount of lost earnings by which the estate has been diminished. This theory is three steps removed from *Monias,* namely, (1) the death of the decedent, (2) the exclusion from the earnings stream of expenditures for the support of others, and (3) the exclusion from the earnings stream of expenditures for personal expenses. This theory of survival act damages has not been briefed or argued in this case, and it is not Maryland law.

Under present Maryland law the division of damages between a Lord Campbell's action and a survival action is determined by the death of the decedent. We agree with the statement, set forth below, of the Supreme Court of Missouri in *State ex rel. Smith v. Greene,* 494 S.W.2d 55 (1973).

"[The] duplication of damages is impossible where there are two causes of action. The wrongful death damages begin with the death of the person wronged. The survival action damages end with the death of the person wronged. There is no overlap or duplication of damages."

*Id.* at 60.

In sum, if an injured person lives to the entry of judgment in a personal injury action, the damages may include

future lost earnings based on the pre-accident life expectancy of the plaintiff. If the injured person lives for some period following the injury but dies before judgment, lost earnings in the survival action are measured only by the period from the inception of the loss of earnings to death. If, as here, the injured person is killed instantly, there are no future lost earnings damages in the survival action.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONER.**