LAGOA, J.
Estrella Estrada (“Estrada”) and her husband, Carlos Estrada, appeal from an arbitration award in a medical negligence claim. The single issue raised on appeal concerns the interpretation of section 766.207(7)(a), Florida Statutes (2012), which provides for an award of loss of earning capacity in voluntary binding arbitration of medical negligence claims. Because we conclude that the arbitration panel erroneously applied the law of damages for loss of earning capacity, we reverse and remand for the arbitration panel to award Estrada damages for her loss of earning capacity based upon her pre-injury life expectancy.
I. FACTUAL AND PROCEDURAL HISTORY
In September 2007, Estrada underwent a routine mammogram at Mercy Hospital. Dr. Amisha Agarwal interpreted the results of Estrada’s mammogram, and did not report evidence of microcalcifications. Two-and-a-half years later, Estrada was diagnosed with stage 3C breast cancer. Estrada has undergone extensive treatment, but currently works full time in the same profession as she did prior to her diagnosis.
Under the alternative arbitration procedure for medical negligence claims set forth in section 766.207,[1] Estrada and *53 her husband Carlos, and Mercy Hospital, Inc., South Florida Medical Imaging, P.A., and Amisha Agarwal, M.D. (collectively, “Mercy”), voluntarily agreed to have the issue of damages arising from “the medical malpractice incident regarding a mammography performed on September 5, 2007, involving Estrella Estrada and a delay in diagnosis of breast cancer” determined by an arbitration panel. See § 766.207(2), Fla. Stat. (2012).
The parties were in disagreement over the issue of damages for loss of earning capacity. As a result, Estrada filed a motion to determine the scope of recoverable economic damages, seeking an order establishing that she “is entitled to present evidence ... regarding her loss of future wage earning capacity based on her severely curtailed life expectancy.” Mercy Hospital filed a response and a motion in limine, arguing that under Florida law Estrada was not entitled to measure her damages for loss of earning capacity based on her pre-injury life expectancy. South Florida Medical Imaging and Argawal also filed a response and motion in limine, arguing that Estrada was “essentially trying to craft a way of having a personal injury claim survive death of the injured party.” The Chief Arbitrator denied Estrada’s motion, and the matter proceeded to arbitration.
Despite the fact that Estrada’s motion was denied, the arbitration panel permitted argument on the issue at the start of the arbitration hearing. After hearing argument, the panel stated that it would allow evidence on both theories of damages and issue its final decision in the arbitration award. Mercy argued that the award of the damages for loss of earning capacity should be limited by Estrada’s shortened, post-injury life expectancy. To that end, Mercy presented testimony regarding Estrada’s loss of earning capacity measured from the date she would have to stop working because of a recurrence of cancer, to her presumed date of death from the recurrence. Estrada claimed that the damages should be based on her pre-inju-ry life expectancy, and presented testimony as to her loss of earning capacity measured from the point at which she would have to stop working because of a recurrence of cancer, to her otherwise normal life expectancy of 82.8 years. Estrada’s calculation of her damages therefore included a time period after her presumed, premature death.
Both Estrada and Mercy presented evidence that the delay in diagnosis resulted in a reduction of Estrada’s future life expectancy. Estrada presented testimony that there is a ninety percent chance that she will have a recurrence of cancer within three to eight years. Mercy presented testimony that there is, at best, a fifty percent chance of recurrence in the next ten years. It was undisputed that a recurrence of cancer will be fatal for Estrada.[2]
The arbitration panel ultimately awarded Estrada and her husband a total of $1,000,608.00 in both economic and non-economic damages. Of that amount, $365,000.00 was awarded to Estrada for present value of loss of earning capacity *54 and household services. In the award, the arbitration panel stated that “[t]he above award rejects Claimants’ request for an award inclusive of future loss of earning capacity beyond the anticipated death of Estrella Estrada.”[3] Estrada appeals from the panel’s award. See § 766.212(1), Fla. Stat. (2012); § 120.68, Fla. Stat. (2012).
II. STANDARD OF REVIEW
In a medical negligence claim, an arbitration panel’s award of economic damages is governed by section 766.207(7). That section states, in relevant part:
(7) Arbitration pursuant to this section shall preclude recourse to any other remedy by the claimant against any participating defendant, and shall be undertaken with the understanding that damages shall be awarded as provided by general law, including the Wrongful Death Act, subject to the following limitations:
(a) Net economic damages shall be awardable, including, but not limited to, past and future medical expenses and 80 percent of wage loss and loss of earning capacity, offset by any collateral source payments.
§ 766.207(7)(a), Fla. Stat. (2012). Furthermore, “economic damages,” as used in section 766.207, is defined as follows:
“Economic damages” means financial losses that would not have occurred but for the injury giving rise to the cause of action, including, but not limited to, past and future medical expenses and 80 percent of wage loss and loss of earning capacity to the extent the claimant is entitled to recover such damages under general law, including the Wrongful Death Act.
§ 766.202(3), Fla. Stat. (2012).
An award made pursuant to section 766.207(7) is treated as final agency action. See § 766.212(1), Fla. Stat. (2012). In an appeal from final agency action, an appellate court reviews an agency’s conclusions of law de novo. See § 120.68(7)(d), Fla. Stat. (2012) (“The court shall remand a case to the agency for further proceedings consistent with the court’s decision or set aside agency action, as appropriate, when ... [t]he agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action.”); see also U.S. Blood Bank, Inc. v. Agency for Workforce Innovation, 85 So.3d 1139 (Fla. 3d DCA 2012); Dorcely v. State Dep’t of Bus. & Prof'l Regulation, 22 So.3d 834 (Fla. 4th DCA 2009). Because the only issue before us concerns a legal determination made by the arbitration panel, we review the arbitration award de novo.
III. ANALYSIS
We find that the arbitration panel erred in measuring Estrada’s loss of future earning capacity by her post-injury life expectancy. The essence of Mercy’s argument is that Estrada’s claim for loss of earning capacity beyond the date of her “presumed future death” is impermissible because the true beneficiaries of such an award would be her survivors and estate. This argument is erroneous as a matter of law. It is true that in a wrongful death action the decedent’s survivors may recover the value of future loss of support and services and the decedent’s estate may recover loss of prospective net accumulations. See § 768.21(1), (6), Fla. Stat. *55 (2012). However, in Florida, a subsequent wrongful death action is barred when the personal injury litigation results in a judgment favorable to the injured person. Variety Children’s Hosp. v. Perkins, 445 So.2d 1010 (Fla.1988). Once Estrada obtains a judgment in her favor during her lifetime, neither her survivors nor her estate would be entitled to bring a wrongful death action. Estrada therefore is entitled to damages for her entire loss of future earning capacity based on her pre-injury life expectancy in the present medical negligence claim because her survivors and estate will be precluded from recovery for Mercy’s negligence after her death. See In re Joint E. & S. Dist. Asbestos Litigation, 726 F.Supp. 426, 433 (E.D.N.Y.1989) (concluding that since New York courts hold that there can be no wrongful death cause of action where the decedent has obtained a personal injury judgment in his lifetime, the personal injury award must be based on pre-injury work-life expectancy because “[a]ny other rule would result in gross under-compensation”).
Our determination on this issue is consistent with that of the majority of American courts, which calculate an award of loss of earning capacity based on the injured person’s pre-injury life expectancy. As the Supreme Court stated in Sea-Land Services, Inc., v. Gaudet, 414 U.S. 573, 594, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), “[ujnder the prevailing American rule, a tort victim suing for damages for permanent injuries is permitted to base his recovery ‘on his prospective earnings for the balance of his life expectancy at the time of his injury undiminished by any shortening of that expectancy as a result of the injury.”’
This principle was applied in Moattar v. Foxhall Surgical Associates, 694 A.2d 435 (D.C.1997), a case analogous to the instant case. In Moattar, the plaintiff sued her physician for medical negligence, alleging that a delay in diagnosing and treating her breast cancer caused her permanent injuries and damages and would probably result in her premature death. Id. at 436. The trial court precluded the plaintiff from presenting testimony regarding the present value of her future loss of earnings, concluding that the issue was not ripe for consideration until the cancer recurred or until the plaintiffs death. Id. The Court of Appeals reversed, concluding that the trial court erred in precluding the plaintiff from presenting her claim for future economic losses. Id. at 440. In reaching its conclusion, the court stated:
A claim for damages for loss of future earnings resulting from injuries suffered due to the negligence of others is a cognizable element of damages during the life of the injured party. District of Columbia v. Barriteau, 399 A.2d 563, 567 (D.C.1979). Here, we are dealing with loss of earnings recoverable by the injured party in a medical negligence case, not in a survival action. See Monias v. Endal, 330 Md. 274, 623 A.2d 656, 659 (1993). The prevailing view is to allow recovery for economic losses based on a plaintiff’s lifespan if unaffected by the injury resulting from the defendant’s negligence. Burke v. United States, 605 F.Supp. 981, 989 (D.Md.1985) (citations omitted). As this court stated in Barriteau, this element of damages represents “the amount that the injured party would have earned but for the injury.” 399 A.2d at 567 n. 6. The allowance for such recovery is consonant with the principal purpose for compensatory damages in such cases, which is to make the victim whole. See id. at 566.
The allowance of future economic losses resulting from diminished life expectancy is not a premature attempt to recover wrongful death and survival damages, as Dr. DeRosa and Surgical *56 Associates contend, but an element of damages recoverable by the injured party during her lifetime where properly proved. See Sear-Land, Servs., Inc. v. Gaudet, 414 U.S. 573, 594, 94 S.Ct. 806, 819, 39 L.Ed.2d 9 (1974).
Id. at 438 (emphasis added).
Similarly, in Monias v. Endal, 330 Md. 274, 623 A.2d 656 (1993), the plaintiff sued her physician for negligently failing to diagnose and treat her breast cancer. In affirming the award of “‘post-premature death’ loss of future earnings” the Court of Appeals stated:
In an action for personal injuries, a plaintiff may recover for loss of future earnings which will reasonably and probably result from the tort. Adams v. Benson, 208 Md. 261, 271, 117 A.2d 881, 885 (1955). We do not discard this fundamental rule of damages where the defendant’s tort shortens the plaintiffs life expectancy.
... We hold, in accord with the majority of other jurisdictions, that the proper measure of lost earnings damages in a personal injury action for a plaintiff whose life expectancy is reduced by the defendant’s negligence is the plaintiffs loss of earnings based on the plaintiffs life expectancy had the tortious conduct not occurred, rather than loss of earnings based on the plaintiffs post-tort shortened life expectancy. “If the injury shortens plaintiffs life expectancy, the weight of American authority nevertheless computes future earning loss on the basis of the life expectancy plaintiff would have had without the injury.” 4 F. Harper et al., The Law of Torts § 25.8, at 552 n. 9 (2d ed. 1986) and cases cited therein; Sear-Land Services, Inc. v. Gaudet, 414 U.S. 573, 595, 94 S.Ct. 806, 819, 39 L.Ed.2d 9, 26 (1974)....
330 Md. at 280-81, 623 A.2d at 659; accord Edgar v. Sec’y of Dep’t of Health & Human Servs., 989 F.2d 473 (Fed.Cir.1993); Lozada v. United States, 140 F.R.D. 404 (D.Neb.1991), aff'd, 974 F.2d 986 (8th Cir.1992); In re Joint E. & S. Dist. Asbestos Litig., 726 F.Supp. at 426; Burke v. United States, 605 F.Supp. 981 (D.Md.1985); Morrison v. State, 516 P.2d 402 (Alaska 1973); Roers v. Engebretson, 479 N.W.2d 422 (Minn.Ct.App.1992); Hall v. Rodricks, 340 N.J.Super. 264, 774 A.2d 551 (App.Div.2001); Doe v. State of New York, 189 A.D.2d 199, 595 N.Y.S.2d 592 (App.Div.1993). See also Restatement (Second) of Torts § 924, cmts. d, e (1979);[4] 2 J. Stein, *57 Stein on Personal Injury Damages § 6.3 (3d ed.) (“In the case of permanent injuries or injuries causing death, it is necessary, in order to ascertain the damages, to determine the plaintiffs pre-tort life expectancy and pre-tort work-life expectancy because it is pre-tort expectancies, not post-tort, that are relevant to the computation of lost earning capacity.”).
IV. CONCLUSION
In addressing an award of damages for loss of earning capacity, the Supreme Court of Florida explained: “It is the function of an award of damages to place the injured party in an actual, as distinguished from a theoretical position, financially equal to that which he would have occupied had his injuries not occurred.” Renuart Lumber Yards, Inc. v. Levine, 49 So.2d 97, 98 (Fla.1950). Mercy can cite to no Florida case in support of the proposition that this statement is not true where the plaintiffs life expectancy is affected by the tortfeasor’s negligence. It is uncontested that Mercy’s failure to timely diagnose and treat Estrada’s cancer is the reason for her shortened life expectancy. Accordingly, her damages for loss of future earning capacity must be based upon her pre-inju-ry life expectancy. To rule otherwise would result in under-compensation for Estrada, and in essence reward Mercy for its negligence.
For the above reasons, we reverse the award of loss of earning capacity, and remand with directions for the arbitration panel to recalculate the award based upon Estrada’s pre-injury life expectancy.

. “In a proceeding under section 766.207, the liability of the defendants is admitted. The *53 only issue is damages. Those are set by a panel of three arbitrators, one selected by the claimant, one selected by the defendant, and an administrative law judge designated by the Division of Administrative Hearings who serves as the chief arbitrator.” Deno v. Lifemark Hosp. of Fla., Inc., 45 So.3d 959, 960 (Fla. 3d DCA2010).

. At oral argument, counsel for Mercy Hospital argued that it was not true that the testimony below was undisputed that a recurrence would be fatal to Estrada. A review of the medical experts’ testimony reveals that indeed, this assertion was undisputed by all the experts.

. One member of the three-member panel, W. Andrew Haggard, dissented to the decision, writing that the majority’s decision to limit Estrada's award for loss of earning capacity to her shortened, post-injury life expectancy was unsupported by Florida law.

. As stated in the Restatement (Second) of Torts, section 924, comments d and e:
A. Loss or impairment of earning capacity for the future. The extent of future harm to the earning capacity of the injured person is measured by the difference, viewed as of the time of trial, between the value of the plaintiff's services as they will be in view of the harm and as they would have been had there been no harm. This difference is the resultant derived from reducing to present value the anticipated losses of earnings during the expected working period that the plaintiff would have had during the remainder of his prospective life, but for the defendant’s act. (On the determination of the prospective length of life, see Comment e). Accordingly, the trier of fact must ascertain, as nearly as can be done in advance, the difference between the earnings that the plaintiff probably would or could have received during his life expectancy but for the harm and the earnings that he will probably be able to receive during the period of his life expectancy as now determined. In this computation, there are considered the type of work that the plaintiff has done and the type of work that, in view of his physical condition, education, experience and age, he would have been doing and will be likely to do in the future during the working period of his life, together with all other matters reasonably relevant.
On the requirement to reduce an award for loss of future earnings to present worth, see § 913A.
*57 e. The determination of length of life. In the case of permanent injuries or injuries causing death, it is necessary, in order to ascertain the damages, to determine the expectancy of the injured person’s life at the time of the tort. For this purpose it is permissible to use mortality tables and other evidence as to the average expectancy of a large number of persons. If the plaintiff’s physical condition was not that of the average person of that age, or if the plaintiff was or is likely to be in a peculiarly safe or peculiarly hazardous occupation, this additional fact is relevant as indicating a modification of the result that would be derived from an average of all persons. In determining the physical condition of the plaintiff at the time of the tort, all relevant facts known at the trial are considered, including facts not known at the time of the tort. (See § 910). Thus if the injured person was, unknown to him, suffering from a serious malady at the time of the accident, his life expectancy includes a consideration of that fact.
If the person harmed is alive at the time of trial, ordinarily the opinion of experts on the probable diminution of the plaintiff’s life expectancy as a result of the tort is admissible as bearing upon the impairment of future earning capacity. If he has died before trial from a cause for which the defendant is not responsible, the damages are limited to the elements of loss arising before his death. (On the survival of actions and actions for causing death, see §§ 900, 925, and 926). The reduction of life expectancy is not in itself a compensa-ble element of damages, as distinguished from reduced earning capacity.