FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2022-3406
_____

NORTH SHORE MEDICAL CENTER,

Appellant,

v.

CLARA NAVARRO, as Personal
Representative of the Estate of
Mauricio Polifroni, Deceased,

Appellee.

_____

On appeal from the Division of Administrative Hearings.
June C. Mckinney, Administrative Law Judge.

July 10, 2024

LONG, J.

This matter arises from a binding medical malpractice arbitration proceeding. § 766.207, Fla. Stat. An arbitration award under this section constitutes final agency action, therefore we have jurisdiction. § 120.68, Fla. Stat.

*Facts*

On July 30, 2020, Mauricio Polifroni presented to North Shore Medical Center after suffering a stroke. His condition deteriorated and he died thirteen days after admission. The parties in this case, North Shore Medical Center ("North Shore") and Clara Navarro,

Polifroni's wife, agreed to participate in binding damages arbitration pursuant to section 766.207, Florida Statutes.

Before the arbitration hearing, the parties disclosed their witness lists. North Shore planned to call a neurosurgeon and a neurologist. Navarro moved to strike these two witnesses, arguing that their testimony was an attempt to introduce disguised causation evidence, which is impermissible in damages arbitration. *See* § 766.106(3)(b)3, Fla. Stat. (an offer to arbitrate means that "liability is deemed admitted and arbitration will be held only on the issue of damages"). In response, North Shore argued that its neurological experts would show that before the hospital rendered any care to Polifroni, he had already suffered a devastating stroke. North Shore argued that, prior to any medical negligence, the stroke itself had reduced his physical capacity to continue working and providing services. North Shore argued this evidence was necessary to accurately demonstrate Polifroni's future earning capacity before any medical negligence occurred.

Navarro's motion to strike North Shore's neurological experts was granted. The order relied on the holding in *Estrada v. Mercy Hosp., Inc.*, 121 So. 3d 51 (Fla. 3d DCA 2013). The order prohibited any life expectancy testimony or evidence that considered the effects of the stroke.

North Shore was therefore precluded from presenting any evidence as to Polifroni's post-stroke, but pre-malpractice life expectancy. The arbitration panel was only permitted to consider economic scenarios in which he had a normal life expectancy and retirement age without regard to his having suffered a debilitating stroke. The panel awarded Navarro damages for lost services, lost money support, and net accumulations in excess of two million dollars. This appeal follows.

*Analysis*

On appeal, North Shore argues that the order incorrectly struck two of its expert witnesses. North Shore claims it should have been allowed to introduce their testimony regarding the nature of Polifroni's stroke because it was relevant to his pre-negligence life expectancy. We agree.

2

The order striking North Shore's witnesses relies almost exclusively on *Estrada*. But the order misapplies that decision. The defendants in *Estrada* failed to timely diagnose and treat Estrella Estrada's breast cancer. The failure to diagnose her cancer led to a decrease in her life expectancy. The defendants then attempted to introduce evidence of, and benefit from, the decrease in life expectancy that they created. *Estrada*, 121 So. 3d at 53. *Estrada* held that, for the purpose of calculating damages, the relevant life expectancy is that which immediately precedes the negligence. *Estrada* cited the U.S. Supreme Court for the proposition that damages should be based on "prospective earnings for the balance of his life expectancy at the time of his injury *undiminished by any shortening of that expectancy as a result of the injury*." *Estrada*, 121 So. 3d at 55 (emphasis added) (citing *Sea-Land Services, Inc., v. Gaudet*, 414 U.S. 573, 594 (1974)). The Florida Supreme Court has said the same. In the context of a medical malpractice arbitration, damages should be measured according to the decedent's normal life expectancy, "unless there is evidence from which the arbitration panel could conclude that [the decedent] had a reduced life expectancy because of issues unrelated to the medical malpractice." *Barlow v. N. Okaloosa Med. Ctr.*, 877 So. 2d 655, 660 (Fla. 2004).

The proper application of *Estrada* supports North Shore's effort to demonstrate Polifroni's condition immediately prior to the medical negligence. Unlike the defendants in *Estrada*, North Shore was not the cause of Polifroni's stroke. The question for the arbitration panel was Polifroni's earning capacity post-stroke and pre-negligence. It could be, of course, that Polifroni's stroke did not affect his life expectancy or future earning capacity. That is for the arbitration panel to decide. But North Shore cannot be prevented from making its case.

North Shore should have been afforded the opportunity to present evidence as to Polifroni's reduced life expectancy and earning capacity post-stroke and pre-negligence.

3

The order on appeal is SET ASIDE* and the matter is REMANDED for further proceedings.

ROBERTS and ROWE, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Richard B. Mangan, Jr., Katherine A. Gannon and Kelsey T. Campbell of Rissman, Barrett, Hurt, Donahue, McLain & Mangan, P.A., Tampa, for Appellant.

Peter Spillis of Kelley Uustal, PLC, Fort Lauderdale, and Michael R. Kaufman of Michael R. Kaufman, P.A., Miami, and Rebecca Bowen Creed and Bryan S. Gowdy of Creed & Gowdy, P.A., Jacksonville, for Appellee.

---

\* We recognize that, when addressing matters originating under section 766.207, Florida appellate courts have "reversed" orders on appeal. By using the language "set aside," we do not mean to convey a different disposition than we have previously. We use this language only to remain consistent with the language of section 120.68, which provides the legal basis for our review.

4