IRVING B. HAYNES, Pro Ami

*vs.*

WATERVILLE AND OAKLAND STREET RAILWAY.

Kennebec.    Opinion March 30, 1906.

*Negligence.  Damages.   Lost  Usefulness  and  Enjoyment.   Expectancy  of  Life. Evidence.*

1.  That a street railroad company was authorized by the Railroad Commissioners to run cars before its track was finished and put in proper condition, does not exempt the company from liability for injuries resulting from the imperfect condition of the track.

2.  When it appears that a horse frightened by an approaching street car would nevertheless have caused no injury but for the imperfect, unfinished condition of the railroad track, and hence that such condition of the track was a contributing cause of an injury done by the frightened horse, the street railroad company is liable for such injury even though there was no fault in the management of the car.

3.  The expectancy of life of a person injured is an element to be considered in awarding damages for the injury.  In determining this expectation of life, the age at which the last two deceased paternal ancestors died is a material factor.

4.  The loss of earning power is not the extent of the damage sustained from a serious physical permanent injury to a person.  The lost usefulness and enjoyment out of his prospective life are also elements of damage.

On motion and exceptions by defendant.    Overruled.

Action on the case to recover damages for personal injuries suffered by the plaintiff July 22, 1903, at Oakland, Maine, by having his left hand crushed beneath the wheels of one of the defendant's street cars, and which injury was caused by the alleged negligence of the defendant.    The injury to the hand was such that it had to be amputated. At the time of the accident, the plaintiff, then ten years of age was riding with his grandfather in an open wagon drawn by a single horse, owned and driven by the grandfather.    Plea, the general issue.

This action was tried at the October term, 1904, of the Supreme Judicial Court, Kennebec county.    Verdict for plaintiff for $6,500.

The jury also specially found that Gideon C. Haynes, the plaintiff's grandfather who owned the horse and who was driving at the time of the accident, was not guilty of any negligence respecting the harness or the team, which contributed to the accident. Defendant filed a general motion to have the verdict set aside, and also excepted to certain rulings made by the presiding Justice during the trial. Only one of the exceptions was urged at the Law Court.

The case is sufficiently stated in the opinion.

*Harvey D. Eaton*, for plaintiff.

*Charles F. Johnson*, for defendant.

SITTING: WISWELL, C. J., EMERY, SAVAGE, POWERS, SPEAR, JJ.

EMERY, J. *Motion.* At the time and place of the injury to the plaintiff from being run over by a car of the defendant street railway company in Main Street, Oakland, the railway track was unfinished. The ground had been leveled to a level surface, the sleepers were laid on this surface, and the rails on the sleepers, but no ballast or earth had been filled in between the sleepers. The top of the rail was about a foot above the surface of the street. The plaintiff and his grandfather were riding in a wagon along the street to the left of the railway track and a car of the defendant was coming toward them. When the car came near, the plaintiff's horse was frightened by the car and after a few moments swerved violently and upset the wagon, throwing the plaintiff on the track in front of the moving car which ran over him to his injury. There was much conflict of evidence as to how all this happened, but we think the jury could have legitimately found from the evidence in favor of the plaintiff's contention that the horse, upon becoming frightened, first made a quick sharp turn to the right to get about and away from the car in that direction, but, meeting and seeing the unballasted track, was repelled by it and made an even sharper turn to the left with the effect of upsetting the wagon and throwing the occupants on the track. The jury might also have found that the horse would have got round and away but for the unfinished condition of the track, and that that condition, com-

bined with the frightening of the horse by the defendant's car, was a cause of the injury.

The defendant company contended that it had before that time been duly authorized by the Railroad Commissioners to operate its railroad with the track in its unfinished condition at that place, but, if so, that did not exempt it from liability for injuries caused by that condition to persons in the situation of the plaintiff. While the defendant may have had the right to run its cars at that place, yet it was bound to know that it might thereby frighten horses, and it should not have left its track in a condition to add to their fright and prevent their getting out of the way. There was some evidence, therefore, of causative negligence on the part of the defendant company. There was some evidence also of the plaintiff's freedom from contributory negligence. We do not think the evidence preponderates so heavily the other way as to show unmistakably that the jury erred on either issue.

The damages assessed were perhaps large, but not so glaringly excessive as to show clearly that sympathy or prejudice overcame the judgment of the jury. The total loss of the left hand by a boy ten years of age takes a great deal of usefulness and enjoyment out of his prospective life. The loss of earning power is by no means the extent of the injury.

The motion to set aside the verdict cannot be sustained.

*Exceptions.* As bearing upon the expectancy of life of the plaintiff, his grandfather was permitted to testify, against the defendant's objection, as to the age at which his own father and grandfather respectively had died. It is common knowledge that physicians and life insurance companies regard the longevity of one's ancestors as an important factor in determining his expectation of life. The various "mortality tables" only give averages, and in an individual case the expectation may be higher or lower than that average by reason of many circumstances peculiar to that case, such as the presence or absence of inherited disease, deformity, &c. A descent from robust, long-lived stock gives greater promise of long life than descent from frail, short-lived ancestry, other things being equal.

The defendant urges that if such evidence be admissible, then the

inquiry may branch out interminably as to the length of life of all one's ancestors on both sides through grandmothers and great grand-mothers. The court has power, however, to restrain the inquiry within reasonable limits within which the effect or influence can be seen. In this case the inquiry did not go beyond those limits. This exception must be overruled. The others are not urged.

*Motion and exceptions overruled.*