McALISTER *v.* CARL

[No. 96, September Term, 1963.]

448

*Decided February 5, 1964.*

*Motion for rehearing filed March 6, 1964, denied March 12, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*James B. Gilbert,* with whom was *Claire O. Ducker, Sr.,* on the brief, for the appellant.

*Jerrold V. Powers,* with whom were *Sasscer, Clagett & Powers* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The plaintiff in an automobile collision case appeals from a judgment in her favor on the ground that the rulings of the trial court excluded from the consideration of the jury an element of damages for which she was entitled to be compensated.

Despite a narrow statement of the "Question Presented" made by the appellant's brief and accepted by the appellee's brief as adequate, this case, we think, was argued and considered in the trial court (as it was elsewhere actually treated in the briefs in this Court and as it was argued here), as presenting what is a novel question to this Court. It may be stated as follows: may the plaintiff recover damages for injuries sustained through the defendant's negligence based upon her having to give up her chosen and intended occupation because of such injuries, even though she suffered no pecuniary loss through her change of occupation?

The trial court, after expressing doubt about the matter and inviting the submission of authorities sustaining the plaintiff's position, which were not forthcoming at the trial, sustained the defendant's objection to a question which was intended to show that the plaintiff's major study in college had been physical education. Colloquies between court and counsel made it clear that this evidence was intended as the first step in showing that the plaintiff was trained in this field, that she wished and intended to become a teacher of physical education—particularly of swimming—and that her injuries prevented her from doing so and required her to take up another and more sedentary occupation. The court's rulings prevented the introduction of evidence to support this claimed element of damages, it was not referred to in the court's instructions and no argument was permitted to be made based thereon.

The case [1] was submitted to the jury on instructions which, after telling the jury that in the automobile collision giving rise

---

1. There were originally two plaintiffs. One was the young woman involved in the accident, the other was her mother, who owned the car. Judgment for the mother was entered by direction of the court for damages to the car. Only the daughter's claim is affected by this appeal, and she alone is referred to as the plaintiff.

to the suit the defendant (who had been driving one car) was negligent as a matter of law, and that there was no evidence of contributory negligence on the part of the plaintiff (who had been driving the other car), called for determination of these questions: first, whether the plaintiff sustained injuries, or an aggravation of any pre-existing injuries [physical condition, we think, would have been a better term in the light of the evidence] resulting from the accident; and second, if so, the amount of damages. As to damages the court instructed the jury that it might consider the plaintiff's health before the accident as compared with her health since, whether the accident had any effect on her health, the amount of her medical expenses, and "any pain and suffering which she has endured." With regard to the latter the court added: "Of course, the law gives no exact measure for pain and suffering and you must fix the damages, including that item, in such amount as you deem fair to both parties." These instructions on damages were in accord with the usual form of such instructions in general use in this State since *Bannon v. Baltimore & Ohio R. Co.,* 24 Md. 108 (1866). See *Rhone v. Fisher,* 224 Md. 223, 225, 167 A. 2d 773, and cases therein cited. No exceptions were taken to the instructions by either party. We do not regard this as barring the plaintiff's right to appeal, since we think that her objections to the court's rulings on evidence and on the element of damages now in controversy involved therein, were sufficient to preserve the question of the damages properly allowable as a basis for review on appeal. No evidence of the plaintiff's allegedly enforced abandonment of her chosen occupation had been admitted. An objection to the instructions which must be based upon evidence would therefore not have been in order, and the appropriate, if not the only available, way to preserve the question on appeal was by objection to the trial court's rulings on evidence involving the question. That course has been followed.

The jury's verdict was for $1,528.50, which was substantially the sum of the plaintiff's medical expenses which had been duly proven plus $1,000.00. Essentially, the plaintiff's claim is that she should have been allowed to present to the jury as a specific element of damages her claim based upon having to give

up her chosen and intended occupation, even though no pecuniary loss resulted therefrom. As the case comes before us, this is the only issue presented.[2]

Under the usual form of instructions in Maryland relating to damages in negligence cases involving personal injuries, recovery of damages for non-pecuniary harm is allowed as compensation for pain and suffering. This is in accord with the general law. Restatement, *Torts*, § 905, states:

> "Compensatory damages for harm not involving pecuniary loss include compensation
> (a) for bodily harm, and
> (b) for emotional distress."

The difficulty of attaining certainty in the amount of damages for harms to body, feelings and reputation is clearly recognized and stated in § 912 of the same work, particularly in comments a and b. Mere or sheer difficulty in measuring damages for pain and suffering has not prevented their allowance at least in cases where there has been some bodily injury, as there was in the instant case, nor even in the absence of physical impact, in a case where fright caused by the defendant's negligence results "in some clearly apparent and substantial physical injury as manifested by an external condition or by symptoms clearly indicative of a resultant pathological, physiological or mental state." *Bowman v. Williams*, 164 Md. 397, 404, 165 A. 182, 184; *Mahnke v. Moore*, 197 Md. 61, 69, 77 A. 2d 923.

The doctrine is not without its limitations, and recovery for shock or fright due to injury to one's property was held not to be allowable, even though such shock or fright brought on

---

2. The plaintiff did assert a claim in the trial court for some medical expenses as to which evidence was excluded. She also asserted at the trial claims based on the cost of her college education, including such part thereof as was paid out of a Government scholarship loan, which she says would have been cancelled if she had become and remained a teacher for several years. Such claims appear to have been abandoned in the trial court and are not urged on appeal. On the other side of the case, the defendant did not challenge the sufficiency of the plaintiff's evidence as to the cause of her back pains to take the case to the jury.

452

a heart attack resulting in the death of the plaintiff's decedent. *State, Use of Aronoff v. Baltimore Transit Co.,* 197 Md. 528, 80 A. 2d 13. This decision was reached because the consequences ensuing from the defendant's negligence were not such as, in the light of all the circumstances, to have been contemplated as a natural and probable consequence thereof. *Baltimore City Passenger R. Co. v. Kemp,* 61 Md. 74 was cited. (See 197 Md. at 539.) So, too, in *Resavage v. Davies,* 199 Md. 479, 86 A. 2d 879, damages for shock to a mother caused by seeing her children killed by a negligent motorist, when she was in no danger herself, were held (by a sharply divided court) not to be recoverable. The *Aronoff* and *Mahnke* cases both make it clear that damages for which recovery may be allowed must be proximately caused by the defendant's negligent act, and the *Aronoff* and *Resavage* cases indicate that the element of foreseeability may be determinative. In *Resavage* lack of foreseeability of the mother's presence was of major importance in finding the lack of any duty owed to her. *Mahnke v. Moore, supra,* was a case in which the father of the plaintiff child killed the mother in the presence of the child, and about a week later killed himself in the presence of the child, and the injuries to the child were regarded as resulting from "cruel and inhuman treatment or * * * malicious and wanton wrongs." (See 197 Md. at 68.) Neither *Aronoff, Resavage,* nor the instant case involves an intentional wrong, and the limits of foreseeability may, as *Resavage* seems to indicate (199 Md. at 483), be more restricted in cases of only negligent wrongs. However, in our estimation, the injury in controversy—loss of the plaintiff's ability to engage in her chosen and intended occupation—is not beyond the limits of reasonable foreseeability, and here (unlike *Resavage*) there were bodily injuries to the plaintiff herself. It is plain that negligence resulting in an automobile collision may cause, and is likely to cause, physical injury to another, and that physical injury may limit or prevent physical activity in many occupations requiring it, including that of an instructor in physical education. That the injured person might suffer keen disappointment or frustration through having to abandon the occupation in which she was engaged or for which she had prepared herself would also seem within the range of foreseeability.

Authorities are divided, however, as to whether loss of enjoyment of life is compensable in damages. See the cases collected in a note in 120 A.L.R. 535, following the case of *Hogan v. Santa Fe Trail Transp. Co.,* 148 Kan. 720, 85 P. 2d 28, 120 A.L.R. 521. Some states, including Kansas and Indiana, have reversed their positions on this question. Several objections are relied upon to defeat recovery for such damages: usually that such damages are too speculative or uncertain and are incapable of measurement in monetary terms, and sometimes that such damages would overlap other elements of damage otherwise compensated for, and occasionally because of lack of causal connection. Cases which uphold recovery have no difficulty with the question of causation (and we have indicated that here we do not), and they usually meet the other objections on the ground that the problems of determining the existence of such damages and of measuring them in money are not materially different from those involved in making any award for pain and suffering. See a note on the *Hogan* case in 52 Harv. L. Rev. 838-39. See also: *Developments in the Law, Damages, 1935-1947,* 61 Harv. L. Rev. 113, 143-44; Note, 38 Mich. L. Rev. 97, 100; Goodrich, *Emotional Disturbance as Legal Damage,* 20 Mich. L. Rev. 497.

*Hogan* is probably the leading case in refusing to allow damages for loss of enjoyment. There the plaintiff, a woman sixty-three years old, who was an accomplished violinist, sustained an injury which prevented her from playing the violin. She had studied the violin at home and abroad, had given violin lessons, had directed orchestras, and had played solos in public. Playing the violin had been her life work and was her greatest enjoyment. The majority opinion held that "loss of enjoyment is too speculative and conjectural to form a sound basis for the assessment of damages."

In reaching this conclusion the court cited and relied upon *City of Columbus v. Strassner,* 124 Ind. 482, 25 N. E. 65, and other Indiana cases.

A like view was expressed in *Belleview v. England,* 118 S. W. 994 (Ky.), which, along with *Hogan,* is relied on by the defendant. *Belleview* expressly disapproved instructions which, after allowing recovery for mental and physical suffering, loss

of time, expenses and earning capacity, also told the jury that the plaintiff might be compensated "for any diminution of his power to pursue the course of life he might otherwise have done." It was said that if this meant a diminution of the plaintiff's power to earn money, it was already covered, and that "if it meant anything else then it was an element the law does not authorize. Its form is calculated to lead into a field of speculation too indefinite to afford the basis of legal compensation." However, because of the smallness of the verdict the Court of Appeals found no prejudicial error and therefore did not reverse the judgment.

In *Power v. City of Augusta*, 191 F. 647 (decided long before *Erie R. Co. v. Tompkins*, 304 U. S. 64, and while *Swift v. Tyson*, 16 Pet. 1, stated the rule of the Supreme Court), a Federal Circuit Court in Kentucky declined to follow the rule of the Kentucky Court of Appeals as being too narrow and held that compensation might be allowed a plaintiff who was "not a wage-earner or otherwise a money maker," for damages apart from loss of earning power.

The *Power* case relied largely upon disfigurement cases. Recovery may be had in this State for the physical and mental suffering caused by physical injuries and disfigurement. *White v. Parks*, 154 Md. 195, 140 A. 70.

We do not regard many cases in which there has been a loss of the plaintiff's earning power because of an enforced change of occupation on account of injuries sustained as a result of the defendant's negligence as of much relevance here.[3] *Haynes v. Waterville & O. St. Ry. Co.*, 101 Me. 335, 64 A. 614, is, however, an exception to this comment. In that case a young boy had his hand amputated. The court, in holding the verdict not excessive, said that the total loss of his hand took a great deal of the usefulness and enjoyment out of his prospective life, and that the loss of earning power was by no means the extent of the injury.

---

3. Such cases include *Churbuck v. Union R. R. Co.*, 380 Pa. 181, 110 A. 2d 210; *Arditi v. Brooks Erection Co.*, 266 S. W. 2d 556 (Mo.); *Wichita Valley Ry. Co. v. Williams*, 6 S. W. 2d 439 (Tex. Civ. App.); *Tamiami Trail Tours v. Wooten*, 47 So. 2d 743 (Fla.); *Canepa v. State*, 203 Misc. 694, 117 N. Y. S. 2d 177, aff'd 306 N. Y. 272, 117 N. E. 2d 550.

Most of the cases which have upheld recovery for loss of enjoyment have done so on a broader basis than is involved here. Usually they deal with capacity to enjoy things which involve matters of common experience with which a jury may be expected to have some familiarity. Among the cases allowing recovery for loss of enjoyment or of the capacity to enjoy life, see *Reed v. Jamieson Inv. Co.,* 168 Wash. 111, 10 P. 2d 977, 15 P. 2d 1119 (1932); *Bassett v. Milwaukee No. Ry. Co.,* 169 Wis. 152, 170 N. W. 944 (1919); *Grenawalt v. Nyhuis,* 335 Mich. 76, 55 N. W. 2d 736; *Daugherty v. Erie Ry. Co.,* 403 Pa. 334, 169 A. 2d 549. Cf. *Warth v. Jackson Co. Ct.,* 71 W. Va. 184, 76 S. E. 420 (1912) *District of Columbia v. Woodbury,* 136 U. S. 450, we think also supports the right to recover for inability to pursue one's ordinary pursuits, even though one of the activities there which the plaintiff could no longer carry on (writing articles for medical journals) was not remunerative.

Though we agree with courts and commentators who have adopted the view that the difficulty of measuring damages for loss of enjoyment in terms of money should not of itself be a bar to the recovery of damages for such loss, we are not unmindful of the numerous cases in which this court has held that purely speculative damages are not recoverable. It is difficult to lay down any hard and fast rule and to draw a clear and sharp line of demarcation between damages which are purely speculative and damages which are capable of some reasonable measurement based upon the common knowledge or experience of juries (or of judges sitting without juries). In cases involving loss of capacity to enjoy more or less usual or familiar things or activities of life, the element of speculation seems no greater than in disfigurement cases, such as *White v. Parks, supra.* But once we get beyond that and have to consider such a question as we have here—damages for the enforced abandonment of a desired occupation which the plaintiff had not entered upon—the problem is apt to become more difficult and the guides of common experience less sure.

In some instances, however, this might not present any great added difficulty. Thus, we might suppose a case in which the plaintiff has completed a college course designed as a prelimi-

nary to entering medical school, has just graduated from medical school, has taken and passed the necessary examinations and has received a license to practice, has prepared himself and plans to engage in surgery, and has been appointed to an internship in some great hospital. Then, through the defendant's negligence, he suffers injuries to his hands which prevent him from practising surgery. In such a case, and leaving to one side any question of pecuniary loss which might be entailed, the loss of the plaintiff's opportunity to engage in his chosen occupation would seem to be one for which damages could be awarded without any substantially greater risk of speculation than would be involved in making an award for disfigurement (apart from loss of earning power consequent thereon), and would seem to be equally compensable.

The instant case would seem to fall somewhere between the case just supposed and the disfigurement cases, on the one hand, and a case such as *Rhone v. Fisher, supra,* 224 Md. 223, 167 A. 2d 773, on the other. In the latter case, this Court refused to allow the recovery of damages for the alleged shortening of the plaintiff's life through injuries due to the defendant's negligence. We followed the majority American view rejecting such damages, and we reviewed at some length English cases which do allow them, but which have come to restrict them, after a few years' experience with such awards, to small amounts. Our decision was rested partly upon such damages overlapping other elements for which damages were allowable, but chiefly on their speculative character and the unsatisfactory experience of the English courts with their allowance, which seems to have stemmed largely from their uncertain and speculative character. (See 224 Md. at 229.)

We think that whether, or to what extent, damages claimed for loss of enjoyment due to enforced change of occupation are too speculative to be submitted to the jury, depends in large measure upon the facts and circumstances of each particular case, and that the admissibility of evidence with regard thereto should (at least until sufficient experience shall have developed to warrant the formulation of a more definite rule) be committed largely to the discretion of the trial court.[4] Here the

4. In the present state of the law on damages for loss of enjoy-

plaintiff was allowed to introduce, and did introduce, evidence with regard to the limitations upon her engaging in and enjoying swimming and horseback riding and long motor trips, all of which are matters which may properly be shown under the cases allowing damages for the loss of enjoyment of usual or familiar things of life. It seems clear that she did not have to give up entirely her participation in such activities as diversions, though she could not engage in them for as long a time continuously as she had done before and could not enter upon her contemplated career as a teacher of physical education.

Our examination of the testimony admitted and of the lengthy colloquies as to what the plaintiff was seeking to show leads us to think that the evidence as to whatever sense of disappointment or frustration or of loss of enjoyment the plaintiff may have experienced through her inability to become a physical education instructor was rather vague and unsubstantial. Though it is evident that she was fond of swimming and that she had elected to make physical education the major field of her collegiate education, it seems clear that she had done little to carry her ambition into practical effect. She had graduated from college, we suppose, in June and had had summer jobs as a lifeguard and swimming instructor. It was not until the September following her graduation that she was advised by her doctor not to go into teaching physical education, but to go into a more sedentary occupation; yet even then, with the opening of the school year close at hand, she had not obtained employment as an instructor in physical education. She spoke merely of then being "interested" in such a job in some unspecified school in Virginia. We find no indication that such employment had been offered her, and certainly she had not engaged in it. Furthermore, there is no proffer of any direct evidence to show that her enjoyment of life in the work which she has since gone into is less than it would have been in physical education. On this state of the record, we think that any dam-

ment, such damages, where founded upon undoubted tortious action, may fall within what are often referred to as "parasitic damages," the term being apparently derived from 1 Street, *Foundations of Legal Liability,* 460, 470 (1906). See also Prosser, *Torts,* § 11, p. 40, citing Street.

458

ages which might have been attributable to the plaintiff's inability to become an instructor in physical education were in the realm of speculation and that on the facts the case falls within the rule of *Rhone v. Fisher, supra,* rather than of *White v. Parks, supra.* We accordingly affirm the judgment appealed from.

*Judgment affirmed, with costs.*