720 A.2d 586

**Brenda L. SMALLWOOD**

v.

**Hilton P. BRADFORD.**

**No. 76, Sept. Term, 1997.**

Court of Appeals of Maryland.

Nov. 20, 1998.

10

Brian Peter Cosby (Brian Peter Cosby, P.A., on the brief), Ocean City, for petitioner.

Ernest I. Cornbrooks, III (Webb, Burnett, Jackson, Cornbrooks, Wilber, Vorhis & Douse, on brief), Salisbury, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

BELL, Chief Judge.

William Jerald Todd ("Todd" or "the decedent") was killed instantly in an automobile accident on Maryland Route 90, in Worcester County, Maryland, near Ocean City, and in which Hilton P. Bradford (the "appellee") was also involved. The decedent's sister,[1] Brenda L. Smallwood, Personal Representative of his estate (the "appellant"), filed a survival action against the appellee in the Circuit Court for Worcester County, alleging that the appellee's negligence caused Todd's death. She sought damages for pre-impact fright, mental and/or emotional pain, anguish, suffering and/or distress and for loss of enjoyment of life.

At the jury trial, the appellant produced an eyewitness who testified as to how the accident occurred. According to that witness, Kem Waters, the appellee's automobile, which was proceeding east on Route 90, crossed the center line and struck the decedent's vehicle traveling in the west bound lane. He testified that, immediately before the collision, he saw Todd attempt to avoid the collision by accelerating and veering his vehicle toward the highway's shoulder.[2] Despite that

---

1. Although he had been married twice, the decedent, who was 43 years old at death, was survived only by his sister and his father, who lived out of State. The record does not reflect that either of them was dependent on the decedent for support, which, perhaps explains why no wrongful death action was pursued.

2. Specifically, Mr. Waters testified:
 "The yellow Volkswagen tried everything it could possibly do to avoid the collision. If he had stayed on the road, he [the appellee's car] would have probably hit him head on, but because he veered to the side, it hit him on his driver's side."

effort at evasion, given "the angle that [the appellee's] car had on [the decedent's car]," Waters stated that the appellee's car crashed into the driver's side of Todd's car and side-swiped virtually its entire length. Todd was dead, Waters said, immediately after the accident, when he checked his pulse, apparently as a result of the impact. The entire incident, according to the eyewitness, "took about fifteen or twenty seconds."

The appellant also produced undisputed evidence, in the form of her testimony, of the decedent's personality and life style, presumably as proof of damages. She testified:

"Jerry was a friendly, outgoing person. He loved life, he loved people. He just enjoyed being around people and doing things. He was a very happy-go-lucky type person. He enjoyed life to its fullest. And everybody that knew him thought the world of him.

\* \* \*

"He enjoyed golf, bicycle riding, and he would get together those bicycle trips from Ocean City to Chincoteague.

"There was a whole group of men his age that would get together and ride their bikes from here to either Chincoteague or Crisfield and just have a grand time going to and from.

"Well, as a kid growing up he sold newspapers on the boardwalk when he was old enough.

"He was a desk clerk, a bartender, a realtor.

"I think everybody knew him. Even the day of the funeral, all of the marquees through Ocean City had, 'We are going to miss you, Jerry Todd.' So, it tells me pretty well everybody in Ocean City knew him.

"Of course, growing up in Berlin, everybody knew him. He was the senior class president and on the sports, basketball, and what-have-you."

Also to prove damages, the appellant sought to offer evidence as to the status of the decedent's estate "in terms of

debt versus assets" and as to the decedent's pre-death financial condition, as reflected by his debts. That evidence was not allowed, the trial judge ruling, "testimony [on those subjects] is irrelevant." The appellant was permitted to prove the funeral expenses incurred as a result of the decedent's death, and did so by introducing a funeral bill in excess of $7,000.00 into evidence.

At the close of the appellant's case, the appellee moved for judgment, pursuant to Maryland Rule 2–519, arguing, *inter alia*, the lack of legally sufficient evidence of his negligence and that damages for pre-impact fright, mental anguish and loss of enjoyment of life are not recoverable in a survival action. Although the court granted, over the appellant's objection, the motion as to the recoverability of damages for pre-impact fright, mental anguish and loss of enjoyment of life, it denied it with respect to liability. Having obtained favorable rulings on damages, the appellee rested without putting on a case. The jury rendered a verdict finding the appellee negligent and awarding the decedent's estate damages in the amount of $2,000.00, the maximum amount then allowed for funeral expenses.[3]

The appellant noted an appeal of the judgment to the Court of Special Appeals. When, shortly thereafter, that court issued its opinion in *Montgomery Cablevision Limited v. Beynon*, 116 Md.App. 363, 696 A.2d 491 (1997), in which a substantial jury verdict for "pre-impact fright"damages was

---

**3.** Maryland Code (1974, 1991 Repl.Vol.) § 7–401(x)(2) of the Estates and Trust Article provided:

"In an action instituted by the personal representative against a tortfeasor for a wrong which resulted in the death of the decedent, the personal representative may recover the funeral expenses of the decedent up to $2,000 in addition to other damages recoverable in the action."

By Ch. 424, Laws of 1995, this section was amended by substituting "the amount allowed under § 8–106(b) of this article" for "$2,000." Section 8–106(b) presently states: "Funeral expenses shall be allowed in the discretion of the court according to the condition and circumstances of the decedent. In no event may the allowance exceed $5,000 unless the estate of the decedent is solvent." Md.Code (1974, 1991 Repl.Vol., 1997 Supp.) § 8–106(b) of the Estates and Trusts Article.

reversed, the intermediate appellate court concluding that damages for pre-impact fright, mental anguish or emotional distress are not compensable, she filed in this Court a Petition for Writ of Certiorari. This Court granted the petition prior to the Court of Special Appeal's consideration of the case. *Smallwood v. Bradford,* 347 Md. 155, 699 A.2d 1169 (1997). We subsequently granted certiorari in *Beynon,* as well. *Beynon v. Montgomery Cablevision,* 347 Md. 683, 702 A.2d 291 (1997).

The appellant asks that we answer the following questions:
"1. Whether a person instantly killed by tortious conduct has a survival action against the tortfeasor for pre-impact fright, and mental and/or emotional pain, anguish, suffering and/or distress.
"2. Whether a person who is instantly killed has a survival action against the tortfeasor for loss of enjoyment of life.
"3. Whether the pecuniary status of the decedent or his estate is relevant evidence of pre-impact emotional pain and suffering or loss of enjoyment of life in an instantaneous death, survival action."

We shall reverse the judgment of the Circuit Court for Worcester County with respect to pre-impact fright and affirm it in all other respects.

## I.

First, the appellant contends that the decedent experienced pre-impact emotional distress and mental anguish in the form of fright during the period in which he became aware that the appellee's automobile had crossed the center line and was on a course for a head-on collision and unsuccessfully attempted to avoid that collision. She argues that the trial court's refusal to instruct the jury as to "pre-impact" fright as an element of damages was error.

As we have seen, the Court of Special Appeals has rejected this argument. In its *Beynon* opinion, the intermediate appellate court exhaustively reviewed Maryland precedents in the area and concluded:

"[T]here can be no award of damages for pre-impact fright suffered by a tort victim who died instantly upon impact or who never regained consciousness after the impact, because no cause of action will lie for 'mere fright' without physical injury (Green v. Shoemaker ) [4] or injury capable of objective determination (Vance ) [5] resulting therefrom. Obviously, one who died instantly upon impact or at least died without recovering consciousness following impact cannot have suffered any injury capable of objective determination as a result of 'pre-impact fright,' i.e., fear, terror, or mental anguish or distress from anticipation of imminent injury or death."

*Montgomery Cablevision Ltd. Partnership v. Beynon,* 116 Md.App. at 388, 696 A.2d at 503. We were not persuaded and, thus, in *Beynon v. Montgomery Cablevision Limited.,* 351 Md. 460, 504–06, 718 A.2d 1161, 1183–84 (1998), we reversed, holding instead that damages for pre-impact fright and mental anguish may be recovered in survivorship actions. In that case, the automobile that the decedent was driving crashed, while traveling at 41 miles per hour, into the rear of a tractor-trailer that was completely stopped, at the rear of a mile long traffic back up, in the middle traffic lanes of westbound Interstate 495, killing the decedent instantly upon impact. At trial, the plaintiff established the defendants's negligence [6] and also that the decedent "was approximately 192 feet from the

---

4. *Green v. T.A. Shoemaker & Co.,* 111 Md. 69, 73 A. 688 (1909).

5. *Vance v. Vance,* 286 Md. 490, 496–97, 408 A.2d 728 (1979).

6. The plaintiffs offered evidence, which the jury accepted, establishing that the tractor-trailer was negligently operated and also negligently maintained since the rear of the trailer was not properly illuminated and, therefore, was not sufficiently visible to motorists approaching from the rear. With respect to Montgomery Cable, the plaintiffs's evidence proved to the jury's apparent satisfaction that, in stopping traffic in order to repair its cable, Montgomery Cable violated specific conditions of the State Highway Administration blanket permit by failing to post advance warning signs to provide oncoming traffic with notice of the unusual and dangerous hazard that the unanticipated traffic back-up presented. *Beynon v. Montgomery Cablevision, Limited,* 351 Md. 460, 465–66, 718 A.2d 1161, 1164 (1998).

rear of Kirkland's tractor-trailer when he became aware of, and then reacted to, the impending danger of crashing into its rear. In his attempt to avoid the collision, [the decedent] slammed on his brakes, as 71½ feet of skid marks attest, and slightly veered to the right." *Id.* at 465, 718 A.2d at 1163. Having extensively reviewed Maryland precedents and cases on the subject from other jurisdictions, we stated our agreement with the plaintiffs and the trial court, that the decedent should be compensated for "pre-impact fright"—the mental anguish the decedent suffered from the time he became aware of the impending crash until the actual collision.[7]

We explained our reasoning as follows:

"In *Green [v. T.A. Shoemaker & Co.*, 111 Md. 69, 73 A. 688 (1909)], the underlying reason we required physical injury as a result of an emotional injury before emotional injuries are compensable was because 'physical injury' established the genuineness of the emotional harm and guarded against feigned claims. 'Physical injury' provided, and still provides, the objective manifestation of the alleged emotional injury and served, and still serves, as the yardstick by which a tort victim's emotional harm may be measured. 'Such an objective determination provides reasonable assurance that the claim is not spurious.' *Belcher [v. T. Rowe Price]*, 329 [Md. 709,] 735, 621 A.2d [872,] 885 [(1993)]. Here, the decedent's fright is accompanied by both physical injuries and independent objective manifestation. The physical injuries that accompanied the decedent's pre-impact fright are the fatal injuries he sustained as a result of the feared impact—the automobile accident. Moreover, the decedent's fright is capable of objective determination by the 71½ feet of skid marks that the plaintiffs argued, and the jury apparently believed, resulted from the

---

7. The trial court instructed the jury that it could consider and make an award for "pain, suffering and mental anguish" that the decedent experienced before the crash. The jury awarded the decedent's estate $1,000,000 in such damages, which the trial court reduced to $350,000, pursuant to Maryland Code (1974, 1995 Repl.Vol.) § 11–108(b) of the Courts and Judicial Proceeding Article.

decedent's apprehension of impending death, and the collision itself.

"The fact that the fright or mental anguish in this case preceded the crash that resulted in the decedent's fatal bodily injuries does not affect causation. As our cases make clear, whenever a wrongful act naturally and proximately results in harm, 'why should not such effect be regarded by the law, even though such cause may not always, and under all conditions of things, produce like results?' *Green,* 111 Md. at 77, 73 A. at 691. The actor responsible for the wrongful, negligent act is liable for all proximately caused emotional distress experienced by the tort victim. The wrongful conduct need only proximately cause the emotional distress or mental anguish, independent of the physical injuries; the mental disturbance need not result from physical injury. In the instant case, the automobile crash caused decedent's fatal injures, for which a separate cause of action exists, and the respondent is responsible for the emotional disturbance resulting from the crash. Damages for 'pre-impact fright' are recoverable when the decedent experiences it during the 'legitimate window of mental anxiety.' *Faya,* 329 Md. at 459, 620 A.2d at 338–39. In this case, that window opened when the decedent became conscious of the fact he was in imminent danger and it closed with his death. *See generally* Kathleen M. Turezyn, *When Circumstances Provide A Guarantee of Genuineness: Permitting Recovery for Pre–Impact Emotional Distress,* 28 B.C.L.Rev. 881, 883 (1987)( "[S]ome courts have permitted recovery for the emotional distress suffered by a victim upon his or her realization of the peril to which his or her personal security has been exposed by the defendant's negligence"), and cases therein cited. To be sure, however, 'pre-impact fright' damages should compensate a decedent's fright, not the resultant death.

"A rule that does not permit a decedent's estate to recover pre-impact fright damages in a survival action would be illogical in view of the fact that a victim who survives an accident similar to the one in this case would be

entitled to recover damages for the emotional distress and mental anguish he or she suffered before the accident, independent of any physical injury that may have been sustained before, or after, the emotional injury. The purpose of survival statutes is to permit a decedent's estate to bring an action that the decedent could have instituted had he or she lived. Here, there is no question that, had he lived, the decedent would have been permitted to recover damages for the 'pre-impact fright' he suffered before crashing into rear of the tractor-trailer.

"Also, permitting a jury to determine pre-impact fright requires the same reasoning and common knowledge that we allow jurors to exercise in determining non-economic, pain and suffering damages in other tort actions, which, like assault, require an assessment of a victim's fear and apprehension. Direct evidence is not necessary. What is required is evidence from which a reasonable inference could be drawn that the decedent experienced fear or fright. Such evidence exists in this case, the 71½ feet long skid marks made by the decedent's vehicle immediately prior to the actual crash. A jury reasonably could have inferred from that evidence that the decedent was aware of the impending peril, that he was going to crash, and attempted an evasive maneuver to avoid it. The jury equally reasonably could have concluded that the decedent suffered emotional distress or fright during that period before the crash, after he became aware of the imminent danger and began braking."

*Beynon,* 351 Md. at 506–09, 718 A.2d at 1184–85.

This reasoning applies equally to the present case. Here, as in *Beynon,* there was sufficient evidence adduced to have permitted the jury to infer that the decedent suffered great mental anguish or emotional distress in the form of fright or fear immediately before the fatal automobile collision and that the appellee's negligence was the proximate cause of that mental anguish or emotional distress. Also, the mental anguish, "pre-impact fright," was accompanied by both fatal

physical injuries and independent objective manifestation, an attempt to avoid the collision.

An eyewitness, who was driving his vehicle directly behind the decedent's, and, thus, was well-positioned to, and did, observe the entire accident, testified that he saw the appellee's vehicle "drift over" into the decedent's lane of travel, at a speed of approximately fifty-five miles per hour. "At that point," he said, "the Volkswagen in front of me beg[a]n to veer off in an attempt to see the vehicle coming towards him. It was really a position where the oncoming vehicle had such an angle on [the decedent's] car" that "it was just impossible for him to avoid the oncoming car." Nevertheless, the eyewitness stated that, in his attempt to "try to avoid the oncoming car," the decedent started to accelerate and try to speed up onto the right side of the road.

This evidence of the decedent's defensive maneuvering performs the same function as the 71½ feet of skid marks in *Beynon*, it provides the objective manifestation of the decedent's alleged emotional injury and it is a yardstick by which that injury may be measured. In short, it "provides reasonable assurance that the claim is not spurious." *Belcher*, 329 Md. at 735, 621 A.2d at 885. Thus, as in *Beynon*, the appellant in this case could argue that the decedent's fright could be objectively determined by reference to the defensive actions the decedent took as a result of his apprehension of impending death and by the physical impact of the collision itself. If anything, the evidence in this case is stronger than that in *Beynon*.

Hence, the trial court erred in not submitting the issue of pre-impact fright damages to the jury for its determination. The case must be remanded to the trial court for further proceedings in this regard.

## II.

The appellant's next contention is that, notwithstanding his death immediately upon impact, the decedent has a cause of action against the appellee for the loss of his enjoy-

ment of life. His loss of enjoyment of life action has two aspects, she argues; the decedent suffered *two* compensable, "temporal losses of enjoyment of his life":

> "[The decedent] lost the actual, subjective and conscious enjoyment of his life for a few seconds as he suffered pre-impact fear and the resultant debilitating affect [sic] upon his nervous system (including inferentially, 'heart palpitations'), and he then objectively lost the enjoyment of the rest of his life post-impact, after he was instantly killed. The objective manifestation of tortious impact upon [the decedent]'s nervous system is that he increased his speed and veered. As a direct result of the tortious impact upon his nervous system (the infliction of fear), [the decedent] subjectively and consciously lost the enjoyment of the final seconds of his life."

The appellant, therefore, seeks to recover for the decedent's pre-impact loss of enjoyment of life and, despite the decedent's instant death, his post-impact loss of enjoyment of life, as well. Generally, the "loss of enjoyment of life" includes the "impairment of the capacity to enjoy life, or to enjoy a particular avocation" and, in some cases, it constitutes a proper, separate element of damages. 38 Am Jur 2d. Fright, Shock and Mental Disturbances § 56 (1986, Cum.Supp.1998) (citing *Aretz v. United States,* 456 F.Supp. 397 (S.D.Ga.1978); *Budek v. Chicago,* 279 Ill.App. 410 (1935); *King's Indiana Billiard Co. v. Winters,* 123 Ind.App. 110, 106 N.E.2d 713 (1952); *Haynes v. Waterville & O. Street R. Co.,* 101 Me. 335, 64 A. 614 (1906); *Baker v. Manhattan R.Co.,* 54 N.Y. Super Ct. (22 Jones & S) 394, *aff'd* 118 N.Y. 533, 23 N.E. 885 (1890); *Warth v. County Court,* 71 W.Va. 184, 76 S.E. 420 (1912). *See also* Annotation, Loss of Enjoyment of life as a Distinct Element or Factor in Awarding Damages for Bodily Injury, 34 A.L.R. 4th 193 (1996); *Kirk v. Washington State University,* 109 Wash.2d 448, 746 P.2d 285 (1987). The cases that hold that the impairment of the capacity to enjoy life or to enjoy a particular avocation is not a proper element of damages, do so on the basis that such damages are too conjectural and speculative and too difficult of measurement to form a substantial basis

for recovery. 38 Am Jur 2d. Fright, Shock and Mental Disturbances § 56; *see also* cases therein cited; *Loth v. Truck–A–Way Corp.,* 60 Cal.App.4th 757, 766, 70 Cal.Rptr.2d 571, 577 (1998).[8]

In *McAlister v. Carl,* 233 Md. 446, 197 A.2d 140 (1964), this Court acknowledged both that the "[a]uthorities are divided ... as to whether loss of enjoyment of life is compensable in damages," *id.* at 453, 197 A.2d at 143, citing 148 Kan. 720, 85 P.2d 28, 120 A.L.R. 521, and some of the reasons several States have denied recovery for such damages: "usually that such damages are too speculative or uncertain and are incapable of measurement in monetary [ ] terms, and sometimes that such damages would overlap other elements of damage otherwise compensated for, and occasionally because of lack of causal connection." *Id.,* 197 A.2d at 144. We also recognized that there is a difference, with respect to proof, between the loss of enjoyment of life, in its broader sense—those cases which "deal with capacity to enjoy things which involve matters of common experience with which a jury may be expected to have some familiarity, *id.* at 455, 197 A.2d at 145,—and in its narrower sense—those cases involving "damages for the enforced abandonment of a desired occupation which the plaintiff had not entered upon." *Id.* The former, we suggested, is less susceptible to the charge that proof of damages is too speculative: "[i]n cases involving loss of capacity to enjoy more or less usual or familiar things or activities of life, the element of speculation seems no greater than in disfigurement cases." *Id.*

---

8. "Case law from jurisdictions in which courts have considered issues related to loss of enjoyment of life generally falls into four categories: (1) cases that have totally rejected loss of enjoyment of life as a consideration in awarding damages; (2) cases that hold loss of enjoyment of life is not a separate element of damages; (3) cases that recognize loss of enjoyment of life can be considered by the jury, but do not address the issue of whether it can be considered as a separate element of damages; and (4) cases that recognize loss enjoyment of life can be considered as a separate element of damages under particular circumstances." Pamela J. Hermes, *Loss of Enjoyment of Life—Duplication of Damages Versus Full Compensation,* 63 N.D.L.Rev. 561, 565 (1987).

The issue in *McAlister v. Carl* did not involve loss of enjoyment of life in its broader sense, as in this case; rather it was the narrower loss of enjoyment of a particular occupation or avocation. *Id.* at 449, 197 A.2d at 141. The Court addressed that issue from two perspectives. Concerning foreseeability, it observed:

"in our estimation, the injury in controversy—loss of the plaintiff's ability to engage in her chosen and intended occupation—is not beyond the limits of reasonable foreseeability, and here ... there were bodily injuries to the plaintiff herself. It is plain that negligence resulting in an automobile collision may cause, and is likely to cause, physical injury to another, and that physical injury may limit or prevent physical activity in many occupations requiring it, including that of an instructor in physical education. That the injured person might suffer keen disappointment or frustration through having to abandon the occupation in which she was engaged or for which she had prepared herself would also seem within the range of foreseeability." .

*Id.* at 452, 197 A.2d at 143. From the standpoint of proof of damages, the Court said:

"We think that whether, or to what extent, damages claimed for loss of enjoyment due to enforced change of occupation are too speculative to be submitted to the jury, depends in large measure upon the facts and circumstances of each particular case, and that the admissibility of evidence with regard thereto should (at least until sufficient experience shall have developed to warrant the formulation of a more definite rule) be committed largely to the discretion of the trial court."

*Id.* at 456, 197 A.2d at 146 (footnote omitted).

Addressing the merits of the case before it, the Court held that "any damages which might have been attributable to the plaintiff's inability to become an instructor in physical education were in the realm of speculation." *Id.* at 457–58, 197 A.2d at 146. By way of explanation, it explained:

"Our examination of the testimony admitted [9] and of the lengthy colloquies as to what the plaintiff was seeking to show leads us to think that the evidence as to whatever sense of disappointment or frustration or of loss of enjoyment the plaintiff may have experienced through her inability to become a physical education instructor was rather vague and unsubstantial. Though it is evident that she was fond of swimming and that she had elected to make physical education the major field of her collegiate education, it seems clear that she had done little to carry her ambition into practical effect. She had graduated from college, we suppose, in June and had had summer jobs as a lifeguard and swimming instructor. It was not until the September following her graduation that she was advised by her doctor not to go into teaching physical education, but to go into a more sedentary occupation; yet even then, with the opening of the school year close at hand, she had not obtained employment as an instructor in physical education. She spoke merely of then being 'interested' in such a job in some unspecified school in Virginia. We find no indication that such employment had been offered her, and certainly she had not engaged in it. Furthermore, there is no proffer of any direct evidence to show that her enjoyment of life in the work which she has since gone into is less than it would have been in physical education."

*Id.* at 457, 197 A.2d at 146.

In *Beynon,* 351 Md. at 506–07, 718 A.2d at 1184, we determined that evidence of the decedent's reaction to a crisis, in that case, the impending collision, was an objective and

---

9. The trial court permitted the plaintiff, an aspiring physical education teacher, who had sustained serious bodily injury from an automobile accident, which required her to give up her intended active occupation in swimming in favor of a more sedentary one, to introduce evidence with regard to the limitations she had in engaging in and enjoying swimming and horseback riding and long motor trips. The Court pointed out that such evidence pertained to "matters which may properly be shown under the cases allowing damages for the loss of enjoyment of usual or familiar things of life." *McAlister v. Carl,* 233 Md. 446, 457, 197 A.2d 140, 146 (1964).

sufficient basis for a trier of fact to assess that decedent's state of mind, at least with respect to emotional or mental anguish in the form of fear, as it relates to that particular crisis, and to value the extent of the decedent's fear. Such circumstantial evidence does not require the trier of fact to engage in pure speculation either with respect to the proof of the pre-impact fear or the damages attributable to it. Common experience and legal precedents, including our own, support that conclusion.

■ The appellant maintains that the proof of the decedent's loss of enjoyment of life is the same evidence that we have held sufficient to establish his pre-impact fright. With respect to the claim for "pre-impact" loss of capacity to enjoy life, the appellant acknowledges that it is provable by reference to the decedent's pre-impact fear. Both "pre-impact fright" and "pre-impact loss of enjoyment of life," seek recovery for the emotional distress and mental anguish decedent experienced during the brief moments after decedent became aware of the impending danger and before the fatal impact. Thus, those damages overlap, if they are not identical to, any "pre-impact fright" damages she might prove. *See supra* at 506–07, 718 A.2d at 1184. Duplicative or overlapping recoveries in a tort action are not permissible. *See Monias v. Endal,* 330 Md. 274, 287, 623 A.2d 656, 662 (1993); *Montgomery Ward & Co. v. Cliser,* 267 Md. 406, 424–25, 298 A.2d 16, 26 (1972); Restatement (Second) of Judgments § 46(2)(b) (1982).

The appellant asserts that proof, the objective manifestation, of the decedent's post-impact loss of the enjoyment of the rest of his life is also provided by the evidence of how the decedent reacted to the impending crisis and subsequent collision. That he increased his speed and veered to avoid the collision constitutes, according to the appellant, the objective manifestation of the tortious impact on the decedent and provides the basis for the trier of fact to infer his post-impact damages. From the evidence that we have held sufficient to permit a trier of fact to infer compensable pre-impact fright, in short, the appellant urges that the trier of fact also be

permitted to infer compensable post-impact loss of enjoyment of life.

As we have seen in connection with pre-impact fright, the circumstantial evidence of the decedent's reaction to the crisis served two functions: it established the existence of the decedent's injury and it formed the basis for its valuation. In order for the appellant to recover, that evidence must also perform the same function with respect to the proof of the decedent's post-death loss of enjoyment of life.

 The instant case is brought under the Maryland survivorship statute, Maryland Code (1974, 1991 Repl.Vol.) § 7–401(x) of the Estates and Trust Article. That section provides that the personal representative of a decedent's estate may bring "a personal action which the decedent might have commenced or prosecuted ... against a tortfeasor for a wrong which resulted in the death of the decedent." Recovery, therefore, is limited to damages that the decedent could have recovered himself, had he survived and brought the action. Also, "the damages are limited to compensation for pain and suffering endured by the deceased, his lost time, [his funeral expenses,] and his expenses between the time of his injury and his death." *Stewart v. United Electric Light & Power Co.*, 104 Md. 332, 343, 65 A. 49, 53 (1906); *see also Tri-State Poultry Co-op., Inc. v. Carey*, 190 Md. 116, 57 A.2d 812 (1948). Because the decedent did not survive the fatal impact with the appellee's vehicle, he suffered no "post-impact" or "postdeath" loss of enjoyment of life[10] and, thus, is not

---

10. We are aware that a number of courts require a plaintiff or decedent to have "some degree of cognitive awareness for recovery of damages for loss of enjoyment of life." *McDougald v. Garber*, 73 N.Y.2d 246, 536 N.E.2d 372, 538 N.Y.S.2d 937 (1989); *Wheeler Tarpeh–Doe v. United States*, 771 F.Supp. 427, 457 (D.D.C.1991), *rev'd on other grounds*, 28 F.3d 120 (D.C.Cir.1994 ); *Gregory v. Carey*, 246 Kan. 504, 791 P.2d 1329, 1336 (Kan.1990); *Chausse v. Southland Corp.*, 400 So.2d 1199, 1203–04 (La.Ct.App.1981). *See also Flannery v. United States*, 718 F.2d 108, 111 (4th Cir.1983), *cert denied*, 467 U.S. 1226, 104 S.Ct. 2679, 81 L.Ed.2d 874 (1984); *Molzof v. United States*, 911 F.2d 18, 22 (7th Cir.1990), *rev'd on other grounds*, 502 U.S. 301, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992). Other courts have allowed comatose plaintiffs to

entitled to any "post-impact," or "post-death" damages. Indeed, this Court has just recently held that when "the injured person is killed instantly, there are no future lost earnings damages in the survival action." *Shirley Jones, Personal Rep. v. Flood,* 351 Md. 120, 131, 716 A.2d 285, 290 (1998).

## III.

The appellant's final argument, that the trial court erred in excluding evidence and testimony related to the pecuniary condition of the decedent's estate, is related to the previous two. In connection with the claim for loss of enjoyment of life, the appellant proffered the bills reflecting the debt of the decedent's estate as proof of "the extent to which [the decedent's] loss of enjoyment of life was increased by his knowledge that he had insufficient assets to pay his Estate's bills were he to be killed by [the appellee]'s automobile." And, because "pecuniary status is a matter of great practical concern to an ordinary person, and the desire to depart this life being thought well of by one's creditors is probative of one's loss of enjoyment of life when faced with imminent death," the appellant maintains that "the admission of evidence related to the pecuniary status of the Estate has a 'tendency to make the existence' of [the decedent's] loss of enjoyment of life for a few seconds prior to his death, after the tortious impact on his nervous system, 'more probable ... than it would be without the evidence' and it should have been admitted."

Maryland Evidence Rule 5–402 provides "Except as otherwise provided by constitutions, statutes, or these rules, or by decisional law not inconsistent with these rules, all

---

recover damages for their inability to enjoy life. *Rufino v. United States,* 829 F.2d 354, 362 (2d Cir.1987); *Holston v. Sisters of the Third Order of St. Francis,* 247 Ill.App.3d 985, 187 Ill.Dec. 743, 618 N.E.2d 334, 347 (1993), *aff'd,* 165 Ill.2d 150, 209 Ill.Dec. 12, 650 N.E.2d 985 (Ill.1995); *Moore v. Kroger Co.,* 800 F.Supp. 429 (N.D.Miss.1992), *aff'd,* 18 F.3d 936 (5th Cir.1994); *Eyoma v. Falco,* 247, N.J.Super. 435, 247 N.J.Super. 435, 589 A.2d 653 (A.D.1991); *Wagner v. York Hosp.,* 415 Pa.Super. 1, 608 A.2d 496, *app. dismissed without opin.,* 532 Pa. 646, 614 A.2d 1143 (1992). We express no opinion as to these cases.

relevant evidence is admissible. Evidence that is not relevant is not admissible." Rule 5–401 defines relevant as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See Williams v. State,* 342 Md. 724, 736, 679 A.2d 1106, 1112 (1996). It is well settled that the admission of evidence, including the determination of its relevance, *Merzbacher v. State,* 346 Md. 391, 404, 697 A.2d 432, 439 (1997), is committed to the considerable and sound discretion of the trial court. *Id.; North River Ins. Co. v. Mayor and City Council of Baltimore,* 343 Md. 34, 89–90, 680 A.2d 480, 508 (1996); *Armstead v. State,* 342 Md. 38, 66, 673 A.2d 221, 235 (1996); *Lubinski v. State,* 180 Md. 1, 8, 22 A.2d 455, 459 (1941). Although a finding of relevancy does not guarantee admissibility, its prejudicial effect sometimes outweighing its probative value, *Merzbacher,* 346 Md. at 404, 697 A.2d at 439; *Williams,* 342 Md. at 737, 679 A.2d at 1113; Rule 5–403, where such a finding has been made, and the only challenge is to its appropriateness, the trial court's determination in that regard will not be reversed unless the evidence is plainly inadmissible under a specific rule or principle of law or there is a clear showing of an abuse of discretion. *White v. State,* 324 Md. 626, 637, 598 A.2d 187, 192 (1991); *Thomas v. State,* 301 Md. 294, 317, 483 A.2d 6, 18 (1984), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985).

The trial court did not abuse its discretion in excluding evidence of the pecuniary status of the decedent's estate on the ground of relevance. *See* Rules 5–401 and 5–402; *Merzbacher v. State,* 346 Md. 391, 697 A.2d 432 (1997); *State v. Broberg,* 342 Md. 544, 677 A.2d 602 (1996). We are unable to discern how that evidence tended to prove the decedent's loss of enjoyment of life or even the extent of the damages attributed thereto. In fact, we agree with the appellee on this point:

"The reasons advanced by the Appellant in her Brief for admitting this evidence conjure up scenarios involving the most unacceptable kinds of speculation, i.e., that among [the

decedent's] last thought processes, as he anticipated his death, [the decedent] was worried that his creditors would be unpaid as a result of his unanticipated death. It could be speculated, with equal credibility, that, if [the decedent] even thought about his debts just prior to his death, he was relieved that he would not have to worry about them any longer. Inviting speculation of this nature into the jury's deliberations serves no useful purposes, and is counterproductive, as it tends to confuse the legitimate issues which the jury is called upon to decide. Rule 5–403. The Appell[ee] also respectfully suggests that inviting such speculation undermines the integrity and credibility of the civil justice system."

JUDGMENT REVERSED IN PART AND AFFIRMED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR WORCESTER COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE.

CHASANOW and RAKER, JJ., concur and dissent.

RAKER, Judge, concurring in part and dissenting in part:

The appeal presented three questions.[1] The Court correctly decided that the decedent did not have a cause of action against the Appellee for the loss of enjoyment of his life. The Court also correctly decided that the trial court did not err in excluding evidence of the pecuniary status of the decedent's estate on the ground of relevance. I therefore join Parts II and III of the Court's opinion.

---

1. The questions presented are as follow:

"1. Whether a person instantly killed by tortious conduct has a survival action against the tortfeasor for pre-impact fright, and mental and/or emotional pain, anguish, suffering and/or distress.

2. Whether a person who is instantly killed has a survival action against the tortfeasor for loss of enjoyment of life.

3. Whether the pecuniary status of the decedent or his estate is relevant evidence of pre-impact emotional pain and suffering or loss of enjoyment of life in an instantaneous death, survival action."

I dissent, however, from Part I of the Court's opinion, in which the Court ruled that the trial court erred in not submitting the issue of pre-impact fright damages to the jury. In my view, pre-impact fright is not recoverable under Maryland law and the trial judge properly granted Appellant's motion to dismiss on this basis. The rationale supporting the view that pre-impact fright should not be recoverable was well stated by Judge Bloom for the Court of Special Appeals in *Montgomery Cablevision v. Beynon*, 116 Md.App. 363, 372–89, 696 A.2d 491, 495–503 (1997), *rev'd* 351 Md. 460, 718 A.2d 1161 (1998). I agreed with his well reasoned opinion in that case, *see Beynon v. Montgomery Cablevision*, 351 Md. 460, 463–64, 718 A.2d 1161, 1163 (1998), Chasanow and Raker, JJ., dissenting), and believe it is equally applicable in this case. Accordingly, I would affirm the judgment of the Circuit Court for Worcester County dismissing Appellant's claim for pre-impact fright.

Judge CHASANOW has authorized me to state that he joins in the views expressed herein.

WILNER, J., dissents.

WILNER, Judge, dissenting.

For the reasons noted in my dissent in *Beynon v. Montgomery Cablevision Limited Partnership*, 351 Md. 460, 718 A.2d 1161 (1998), I respectfully dissent from the conclusions reached in Part I of this Opinion and from the judgment. The Majority's allowance of pre-impact damages is based entirely on the evidence that the decedent accelerated and turned his wheel. This evidence does not speak to the decedent's final thoughts before impact. Indeed, as in *Beynon*, it is very likely that his only thought for those few seconds was averting the crash. Decedent's fright cannot be objectively determined or even reasonably inferred.